**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Vicki Coffey, | No. CV-24-02725-PHX-SPL |
| Plaintiff, | |
| vs. | **ORDER** |
| Fast Easy Offer LLC, et al., | |
| Defendants. | |

Before the Court is Defendants Fast Easy Offer LLC ("FEO"), GFSG LLC d/b/a Keller Williams Realty Phoenix ("KW Phoenix"), and Keller Williams Realty, Inc.'s ("KWRI") joint Motion to Dismiss (Doc. 24); Plaintiff's Response (Doc. 25); and Defendants' Reply (Doc. 26). For the following reasons, the Motion is granted.

**I.    BACKGROUND**

On October 9, 2024, Plaintiff initiated this putative class action against Defendants alleging violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(c), and the Do-Not-Call regulations issued under that statute. (Doc. 1 ¶¶ 102–10). On January 22, 2025, she filed her First Amended Complaint ("FAC") (Doc. 19), which is the operative pleading for purposes of Defendants' Motion to Dismiss.

Plaintiff alleges that starting in early 2024, she received "numerous telephone calls and text messages from a rotating series of phone numbers, seeking to solicit Plaintiff to sell her home or engage various entities to represent or assist her in the sale of her home." (Doc. 19 ¶ 20). Despite having registered her cell phone number with the national Do-Not-

Call Registry since 2004, Plaintiff received a minimum of six phone calls and two text messages from a phone number that associated itself with the website https://www.fasteasyoffer.com. (Doc. 19 ¶¶ 19, 25, 27). That website is allegedly operated by Defendant FEO, which is also alleged to share employees and officers with KW Phoenix. (*Id.* ¶¶ 28, 52, 56–60). Plaintiff alleges that FEO and KW Phoenix share revenue from mass telephone call and text message marketing, and that KWRI receives a portion of this revenue from KW Phoenix. (*Id.* ¶¶ 57–60).

The person who made the phone calls and text messages to Plaintiff identified themselves as "Yannick." (*Id.* ¶¶ 21–23). The first text, on September 23, 2024, read, "Hello Vickey, this Yannick the home buyer. Have you given up on selling your . . . property?" (*Id.* ¶ 23). The second text, sent on October 7, read, "Have you given up on selling your property?" (*Id.*). Plaintiff did not recognize the callers and was not looking to sell her home. (*Id.* ¶ 24). When Plaintiff finally spoke with the caller to identify the party responsible for these messages, she was provided a website link to https://www.fasteasyoffer.com, which is how Plaintiff identified the Defendants against which she has now brought suit. (*Id.* ¶¶ 26–27).

In her Amended Complaint, Plaintiff argues that the calls and text messages she received constitute prohibited "telephone solicitations" in violation of the TCPA and its implementing regulations. (*Id.* ¶¶ 124–28). However, Defendants argue that (1) Plaintiff has failed to plausibly allege that the calls or texts were "solicitations" within the meaning of the TCPA, and (2) her claim against KWRI should be dismissed because Plaintiff has failed to plausibly allege that KWRI is directly or vicariously liable under the TCPA. (*See generally* Doc. 24).

## II.     LEGAL STANDARDS

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" so that the defendant is given fair notice of the claim and the grounds upon which it rests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). A court may

dismiss a complaint for failure to state a claim under Rule 12(b)(6) for two reasons: (1) lack of a cognizable legal theory, or (2) insufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). When deciding a motion to dismiss, all allegations of material fact in the complaint are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).

### III.   ANALYSIS

#### A.   "Telephone Solicitations" Within the Meaning of the TCPA

The TCPA prohibits initiating "more than one telephone [solicitation] within any 12-month period" to a "residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry . . . ." 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2); *see also Whittaker v. Freeway Ins. Servs. Am., Ltd. Liab. Co.*, No. CV-22-8042-PCT-DGC, 2023 U.S. Dist. LEXIS 6018, at *4 (D. Ariz. Jan. 12, 2023). "Telephone solicitation" means "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person . . . ." 47 U.S.C. § 227(a)(4); 47 C.F.R. § 64.1200(f)(15). Whether a call constitutes a solicitation "turns on the 'purpose of the message.'" *Whittaker*, 2023 U.S. Dist. LEXIS 6018, at *5 (quoting *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012)). The primary "issue before the Court is whether, as a matter of law after accepting all of Plaintiff's allegations as true, Defendants' communications can be considered telemarketing or solicitations under the TCPA." (Doc. 25 at 6).

Defendants argue that Plaintiff has failed to plausibly allege a solicitation because her alleged caller "wanted to *buy* her home," but did not ask Plaintiff "to herself purchase, rent, or invest in anything." (Doc. 24 at 6 (emphasis added)). Defendants analogize this case to the factually similar case *Jance v. Homerun Offer LLC*, No. CV-20-00482-TUC-JGZ, 2021 WL 3270318 (D. Ariz. July 30, 2021). In that case, the plaintiff received 29 calls on his cell phone from a purported "local investor" inquiring if the plaintiff had any

interest in selling his property. *Id.* at *1. The caller identified themselves as working for a company called "Homerun Offer," through which the plaintiff was able to identify the defendants against which he ultimately brought suit. *Id.* at *2. The plaintiff in *Jance* brought, *inter alia*, a claim under § 227(c) of the TCPA alleging that the defendants had continuously initiated telephone solicitations despite his requests to be put on the do-not-call list. Chief Judge Zipps found that the definition of "telephone solicitation" within the statute and its implementing regulations did not "encompass[] a scenario in which the caller offers to *buy* something from the recipient of the call." *Jance*, 2021 WL 3270318, at *4 (emphasis added). Because the plaintiff had "allege[d] that the purpose of the calls was to purchase Plaintiff's home, not to induce Plaintiff to make a purchase from the caller," and because the TCPA's definitions of solicitation and telemarketing did "not include offers to purchase," Chief Judge Zipps found that the plaintiff had failed to state a claim under § 227(c) of the TCPA. *Id.*; *see also Hunsinger v. Offer, LLC*, No. 3:21-CV-2846-BH, 2022 WL 18143951, at *5 (N.D. Tex. Dec. 7, 2022), *report and recommendation adopted*, No. 3:21-CV-2846-BH, 2023 WL 122649 (N.D. Tex. Jan. 6, 2023) ("District courts which have considered this issue have generally found that the terms 'telephone solicitation' and 'telemarketing' do not encompass calls for the purpose of offering to purchase something from the recipient, as long as they do not also encourage the recipient to purchase, rent, or invest in the caller's property, goods, or services.") (collecting cases). Defendants argue that this Court should follow *Jance* and *Hunsinger*'s lead in finding that Plaintiff here has failed to state a claim.

Plaintiff, on the other hand, argues that "this overly narrow interpretation of the TCPA is wrong, as it ignores a host of directly on-point authority—much of which involves entities engaging in the exact same conduct as Defendants—in which those courts found that allegations materially identical to Plaintiff's allegations here are sufficient to state a claim for violation of the TCPA." (Doc. 25 at 8). She cites numerous out-of-Circuit cases to support its broader interpretation of "solicitation." (*See* Doc. 25 at 8–11). Plaintiff also emphasizes the Ninth Circuit's commons-sense approach to determining "solicitation"

4

under the TCPA. *See Chesbro*, 705 F.3d at 918 ("Neither the statute nor the regulations require an explicit mention of a good, product, or service where the implication is clear from the context."). Finally, Plaintiff seeks to distinguish *Jance* by pointing out that it was a case brought by a *pro se* litigant "who did not address any of the theories or arguments Plaintiff advances here." (Doc. 25 at 12).

However, as Defendants point out, the court in *Jance* correctly focused its analysis on the statutory text of the TCPA and its implementing regulations, noting that the clear "wording is aimed at calls that directly advertise and 'not calls that are related in some attenuated way to advertising or telemarketing the caller intends to conduct in the future.'" *Jance*, 2021 WL 3270318, at *4 (quoting *Knutson v. Blue Light Sec., Inc.*, 17CV134-LAB (JMA), 2018 WL 1172611, at *4 (S.D. Cal. Mar. 6, 2018)). Defendants also note that the Supreme Court has cautioned against reaching past the plain text of the TCPA. *See Facebook, Inc. v. Duguid*, 592 U.S. 395, 409 (2021) ("This Court must interpret what Congress wrote . . . ."). The TCPA's plain text focuses on calls and messages that encourage the *solicited party's* purchase or rental of, or investment in, property, goods, or services—however, Plaintiff argues that the soliciting Defendants' offer to purchase her home contains within it an implied offer of services; i.e., she argues that the messages, under the guise of a "free" service, were a pretextual attempt to solicit her to work with Defendants for the sale of her home, which would be to Defendants' ultimate pecuniary benefit. As Plaintiff illustrates,

> [W]hile Defendants may not be charging Plaintiff a line-item invoice for services, they nevertheless charge consumers for services via an 'effective fee' that is deducted from the offer price. For example, if FEO offers to purchase (1) a $100,000 home for $90,000 while providing real estate-related services "for free," or (2) that same $100,000 home for $100,000 with a $10,000 service fee, the outcome and impact on the consumer is effectively the same.

(Doc. 25 at 3). Thus, Plaintiff argues that the phone calls and text messages were sent by FEO "either (1) purchase Plaintiff's home to then immediately resell it or reassign the purchase contract to third-party buyers, (2) identify 'motivated home seller' leads to market

5

to third-party homebuyers, or (3) provide conventional real estate representation for seller transactions." (Doc. 25 at 2).

Numerous courts in the Ninth Circuit have held that even text messages that are facially informational or offering "free" rewards programs may encourage future purchases and thus constitute telemarketing. *See Chesbro*, 705 F.3d at 918 (holding that calls from Best Buy encouraging plaintiff to redeem his reward points encouraged the listener to make future purchases of Best Buy goods); *Abboud v. Circle K Stores Inc.*, 731 F. Supp. 3d 1094, 1103–04 (D. Ariz. 2024) (finding it plausible that text messages encouraging the plaintiff to sign up for special offers was encouraging plaintiff to make future purchases of goods from defendant); *Meyer v. Bebe Stores, Inc.*, No. 14-CV-00267-YGR, 2015 WL 431148, at *3 (N.D. Cal. Feb. 2, 2015) (finding it plausible that a text message asking plaintiff to "confirm opt-in" to a rewards list and offering a 10% off coupon was presumably sent to "encourage future purchases" and thus may constitute telemarketing). The trouble, however, is that Defendants' messages did not purport to be "informational" or offer a free rewards program, implicitly encouraging Plaintiff to make future purchases from Defendants—the messages were an offer for *Defendants* to make a future purchase *from Plaintiff*.

*Chesbro*, the most on-point binding authority, is distinguishable. The Ninth Circuit, approaching the problem "with a measure of common sense," noted that the listener in that case received calls urging him to redeem his Best Buy reward points, directing him to a website where he could further engage with the rewards program, and thanking him for "shopping at Best Buy." *Chesbro*, 705 F.3d at 918. The Court noted that there was "no other use" for the reward points than to go to a Best Buy store and make further purchases. *Id.* Thus, the implication was "clear from the context" that the calls encouraged the listener to make future purchases of goods, products, or services from Best Buy. *Id.* By contrast, even accepting as true Plaintiff's allegations that FEO would ultimately charge Plaintiff an "effective fee" deducted from the offer price if she agreed to sell her home (Doc. 25 at 3), the ultimate result of this alleged solicitation *would not ever require Plaintiff to purchase,*

6

*rent, or invest* in property, goods, or services. *See* 47 U.S.C. § 227(a)(4); 47 C.F.R. § 64.1200(f)(15). In *Chesbro* and the similar line of cases regarding "informational" or "free" rewards-based programs, the soliciting messages were always *ultimately* intended to induce the recipients to purchase something. That is not the case here. *But cf. Anderson v. Catalina Structured Funding, Inc.*, No. 1:21-CV-197, 2021 WL 8315006, at *6 (W.D. Mich. Dec. 21, 2021), *report and recommendation adopted*, No. 1:21-CV-197, 2022 WL 3643733 (W.D. Mich. Aug. 24, 2022) ("Here, though, where Plaintiff has expressed no interest in selling, and Defendant is in the business of offering liquidity to structured settlement holders, Defendant may be offering to make a purchase, but it is also marketing a service. To suggest it is not is too clever by half.").

Furthermore, *Jance* emphasized another key distinction between these "offers to buy" and traditional solicitation messages: the soliciting message must directly advertise, not relate to some potential advertising that the alleged solicitor may want to conduct in the future. *See Jance*, 2021 WL 3270318, at *4. Here, even assuming that Defendants intended to ultimately generate business based on the sale of Plaintiff's home, the messages and calls Plaintiff received relate to future potential advertising. And the fact that Plaintiff was directed to FEO's website, which advertises its real estate services, is not itself dispositive, as "the mere inclusion of a link to a website on which a consumer can purchase a product does not transform the whole communication into a solicitation." *Vallianos v. Schultz*, No. C19-0464-JCC, 2019 U.S. Dist. LEXIS 174729, at *9–10 (W.D. Wash. Oct. 8, 2019). However, on this Court's reading of *Chesbro*, the ultimate dispositive point is not that the messages were only "related in an attenuated way" to potential future advertising or telemarketing, *Knutson*, 2018 WL 1172611, at *4, but rather that they never encouraged Plaintiff "to engage in future purchasing activity" at all—only to engage in future selling activity. *Chesbro*, 705 F.3d at 918.

The Court is sympathetic to Plaintiff's skepticism regarding this buying/selling distinction, especially where the end result is the same: Defendants make money off Plaintiff. It is true that, construing Plaintiff's factual allegations in the most favorable light,

were Plaintiff to agree to use FEO's services to sell her house, Defendants would ultimately benefit from an "effective fee" deducted from the offer price. In that sense, the calls and texts might constitute "solicitations" in the colloquial sense of the word. But even if, in that hypothetical scenario, Plaintiff did not make as much money as she might have made selling her home without FEO's services, she would still be *making* money—and not spending a cent on purchasing any goods or services from Defendants. The calls and texts therefore cannot constitute "solicitations" within the plain statutory meaning of the term, and it is this statutory meaning that must carry the day. Ultimately, Plaintiff's "quarrel is with Congress, which did not define" solicitation "as malleably as [she] would have liked." *Cf. Facebook*, 592 U.S. at 409. This Court cannot rewrite what Congress wrote simply to make the outcome fairer to Plaintiff.

Accordingly, Plaintiff's claim under § 227(c) of the TCPA will be dismissed.

### B. KWRI's Vicarious Liability

Defendants request that this Court dismiss Plaintiff's Amended Complaint in its entirety for failure to state a claim, but in the alternative, it requests that this Court dismiss Plaintiff's claim against KWRI for failure to plead any plausible basis for vicarious liability. (Doc. 24 at 18). Because this Court found that Plaintiff's singular TCPA claim fails as a matter of law, and the Amended Complaint will be dismissed in its entirety, the Court need not consider Defendants' alternate argument.

### IV. CONCLUSION

When granting a motion to dismiss, a court is generally required to grant a plaintiff leave to amend. *See* Fed. R. Civ. P. 15(a)(2). However, a district court need not grant leave to amend where a pleading "could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe, Inc. v. N. California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990). Here, the Court concludes that amendment would be futile as to Plaintiff's cause of action under § 227(c). The messages sent to Plaintiff cannot, as a matter of law, be considered "solicitations" under the TCPA, and Plaintiff's complaint could not be cured by the allegation of additional facts.

Accordingly,

**IT IS ORDERED** that Defendants' Motion to Dismiss (Doc. 24) is **granted** and this case is **dismissed with prejudice**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment accordingly and **terminate** this action.

Dated this 5th day of June, 2025.

Honorable Steven P. Logan
United States District Judge